## No. 10,142.

### NELLIE FOLGER ET AL. VS. HENRY ROOS.

A decree for executory process is not a judgment in the strict sense of the term. It decides nothing, but may be appealed from.

It is an *ex parte* order which may be rendered at chambers as well during vacation as during term time.

Act No. 86 of 1866 was not designed to prohibit the granting of such orders. It proposed to continue in the courts the power of hearing and determining contradictorily, during vacation, motions to quash conservatory and other writs on the face of papers and not on the merits and suits to eject tenants.

Act 86 of 1866, which purported to enlarge the powers of the courts of New Orleans, as then composed, so as to authorize the hearing, during vacation, of motions to quash certain writs and orders, which are issued *ex parte*, has no reference to orders of seizure and sale, which are regulated exclusively by Art. 63 and Articles 732, et seq. of the Code of Practice.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*W. W. Handlin* for Plaintiff and Appellant.

*Jas. McConnell* for Defendant and Appellee.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is a petitory action by the widow and heirs of Antonio Palacio to be recognized as the owners of certain real estate and allowed the rents and revenues thereof from December 26, 1879, when, it is charged, the defendant took wrongful possession.

The main defense is, that the property was acquired by the defendant at a judicial sale, made on that day, which divested Antonio Palacio and passed his title to the defendant.

The plaintiff retorting, charges that the sale in question is a nullity, having been made in furtherance of an order for executory process, signed on September 4, 1879, by the judge of a district court, in New Orleans, *during vacation*, when, under the law, no such order could have been *then* validly granted.

The District Court heard the evidence adduced by the litigants in support of their conflicting claims and dismissed the suit. From this judgment the plaintiff appeals.

In order to establish that the decree for executory process could not have been signed during vacation and so is a nullity. The plaintiff relies on Act No. 86 of 1866 and on the rulings made in 21 Ann. 306 and in 23 Ann. 483.

The act declares that the district courts of New Orleans shall be open from the first Monday of November to the fourth of July, and shall remain open *all the year* for criminal and probate causes, for granting *interlocutory orders and* writs of arrest, habeas corpus, injunctions, sequestrations, attachments, mandamus and provisional seizures on motions to quash and not in their merits, and for proceedings to eject tenants.

The rulings in the two cases relied on are to the effect that the signing of a judgment is a judicial act and cannot validly take place without the consent of parties out of term time—i. e., during vacation.

The judgments thus signed were judgments rendered after a contradictory trial.

A decree for executory process is not a judgment in any sense of the word, within the meaning of the authorities cited, for it decides nothing, no more than an order for a conservatory writ of any description. It has been held to be a judgment only, so far that an appeal lies from it in a proper case.

It is known to both the Spanish and French systems. See Escriche, Diccionario de legis lacion y jurisprudencia, pp. 770, 819, 899, 979, and Merlin vol. *execution parée.*

In the case of Mitchell vs. Logan, 34 Ann. 998 (1003), we took pains to show that it lacks the elements of an ordinary judgment, saying substantially :

It is not preceded by a citation ; it is rendered on no issue ; it adjudicates to plaintiff no right not secured by his notarial act ; it creates no judicial mortgage by registry ; it authorizes no writ for the differences in case of deficiencies between the net proceeds of the sale of the mortgaged property and the amount of the debt.

Numerous authorities were quoted in support of those views, one which is to the effect that an executory proceeding is *not* properly a *suit,* but merely the aid of judicial power to give force and effect to what is equivalent to a judgment confessed. Rousseau vs. Bourgeois, 28 Ann. 186.

It is therefore strictly no judgment. It is simply an *ex parte* order *in rem,* granted at chambers, without any previous hearing, or notice to the ostensible owner of the property, directed to be seized and sold, to satisfy the debt acknowledged in the authentic form.

In the case of Russ vs. Faust, 15 Ann. 477, the court declared that the uniform practice is to issue executory process, or *decrees* rendered and signed at chambers.

The learned counsel for the plaintiffs concedes such to be the practice and the jurisprudence ; but he distinguishes, saying, that the practice is legal when the decrees are rendered and signed at chambers, provided this is done in term time, and that such decrees cannot be thus made, out of term, during vacation, because of the provisions of the act of 1866, No. 86, which does not specify that such decrees may be granted between the day of the adjournment and that of the reopening of a New Orleans district court, and which enumerates what judicial proceedings may take place contradictorily during vacation.

This is a fallacy resulting from a confusion of ideas touching the

purport of the act relied on and from a too narrow conception of its meaning and object.

The purpose in view was to enable litigants to try contradictorily with adverse parties, *during vacation*, motions to quash, on the face of the papers, and not on their merits and suits to eject tenants, which otherwise could not have been then entertained; but the act never was intended to abridge the rights of parties to any *ex parte* or interlocutory decrees to which they would have been entitled during *term* time.

Articles 63, C. P., has an immediate bearing on the subject.

It provides that where the hypothecated property is in the hand of the debtor, and when the creditors, besides his hypothecary right, has against his debtor, a title importing a confession of judgment, he shall be entitled to have the hypothecated property seized *immediately* and sold for the payment of the debt, etc.

The word *immediately* was not inserted in the law for a useless purpose. It means instantly, without delay, at any time, whether within or without term, and must receive its effect.

The Code of Practice calls the *fiat* in cases of executory process an "order of seizure." C. P. 735.

Far from shutting out the defendant from adequate relief, when the claim or mortgage cannot be enforced, the law leaves to the debtor a door wide open to urge, *after* the order has been rendered, defenses which he might have pressed in ordinary cases, only *before* judgment.

This identical question of the validity of an order for executory process made *during vacation*, was raised some sixteen years ago and was very summarily treated by the then Court.

See Thompson vs. Storrs, No. 2545, unreported, and found in O. B. 42, fol. 81, decided December 16, 1872.

In that case, the very authorities relied on (21 and 23 Ann.) were declared to be wholly inapplicable.

The order attacked having been seasonably made, the objection to its validity falls.

This conclusion is in perfect consonance with the spirit and letter of the law and the practice and is eminently conservative.

Construing the judgment of dismissal rendered below, as one rejecting plaintiffs' demand.

It is affirmed with costs.

---

### ON APPLICATION FOR REHEARING.

POCHÉ, J. Plaintiffs' counsel makes an earnest effort to induce us to reconsider our opinion in this case.

The confusion in his mind evidently arises from a misapprehension of the true meaning of the statute under which he has rested his case.

According to his construction, the law is read to mean, that in the absence of that legislation, the district courts for the city of New Orleans were at that time powerless to issue, in vacation, any writs of arrest, habeas corpus, injunction, sequestration, attachment, mandamus and provisional seizure, and hence he argues that the omission of the law-maker to include orders of seizure and sale in the enumeration of the orders or writs which those courts were authorized to grant during vacation, must be construed as a legislative intent to prohibit the issuance of such orders, at any time between the fourth of July and the first Monday of November.

But such is not the purport of the law. It nowhere appears, either in the title or the body of the statute, that the Legislature thereby intended to amend or otherwise alter the articles of the Code of Practice which treat of the manner of issuing the various writs and orders hereinabove enumerated, and under which such writs have always been issued by all the courts in this State, including those of the city of New Orleans, in chambers and out of term time, from the very beginning of our judicial history.

The statute reads as follows: " The courts shall be opened from the first Monday of November to the fourth day of July, and for criminal and probate causes, for granting interlocutory orders and writs of arrest, habeas corpus, injunctions, sequestrations, attachments, mandamus and provisional seizures, *on a motion to quash, and not upon their merits*, they shall remain open the whole year."    *    *    [Italics ours.]

Its title is " An act to amend an act entitled 'An act relative to district courts for the parish and city of New Orleans, approved March 29, 1865.' "

By reference to the latter act, it appears that the only amendment which was proposed by the amending act was to add to the orders enumerated the two writs of *attachment* and *mandamus*, and the power of trying proceedings instituted by a landlord for the possession of leased property, which features were not contained in the amended act, and also to shorten the session of the courts.

The manifest purpose of the legislation, as evidenced by both acts, was not to restrict, but, on the contrary, to enlarge, the powers of the courts referred to. Under the rules of the Code of Practice, as uniformly construed in jurisprudence, it is clear that all the conservatory writs enumerated in the act were issued *ex parte* at chambers

State ex rel. Shakespeare, Mayor et al. vs. Judge.

and at any time of the year. Hence the act could not purport to grant a power already in legal existence and which had been exercised for more than half a century. But, without special legislative authority, the courts of New Orleans were without power to try and dispose, in. vacation, of a motion to quash any of the writs enumerated, which they might have granted during such vacation.

The ends of justice required that the defendant, under any of said writs, which might have been wrongfully issued, shall be empowered to submit the question to judicial test, without. the hardship of waiting until November following.

The sole object of the legislation under consideration was to remedy that evil, and under it the courts were authorized to hold sessions, in order to hear such writs *on a motion to quash, and not upon their merits.* Such is the true meaning of that statute, and it follows that it can have no possible reference to orders of seizure and sale, which are regulated exclusively by Arts. 63 and 732, *et seq.*, of the Code of Practice. They are, essentially, *ex parte* orders, which are admittedly issued at Chambers, and unquestionably in or out of term time. Cumming vs. Archinard, 1 Ann. 279.

We, therefore, conclude that we had committed no error in our previous opinion.

Rehearing refused.