Dorothy D. ROSS et al.

v.

BROWN TITLE CORPORATION et al.

Civ. A. No. 71–1813.

United States District Court,
E. D. Louisiana.

Feb. 1, 1973.

Judgment Affirmed June 11, 1973.
See 93 S.Ct. 2788.

George R. Higinbotham, Jr., Robert J.
Hobbs, Galen S. Brown, New Orleans
Legal Assistance Corp., New Orleans,
La., for plaintiffs.

R. Gordon Kean, Jr., Sanders, Miller,
Downing & Kean, Baton Rouge, La., for
Louisiana Savings & Loan League, in-
tervenor.

Melvin W. Mathes, Beard, Blue,
Schmitt & Treen, New Orleans, La., for
Federal National Mortgage Assn.

Before AINSWORTH, Circuit Judge, and HEEBE and WEST, District Judges.

R. BLAKE WEST, District Judge:

Plaintiff homeowners Dorothy D. Ross, Shannon McClendon, and Dell Clafin have sued defendants to enjoin foreclosure by defendant mortgagees of mortgages on plaintiffs' homes pursuant to the "executory process" procedure provided by Louisiana Code of Civil Procedure, Article 2631 et seq., which procedure plaintiffs maintain is violative of their Fourteenth Amendment rights. Plaintiffs claim that (a) defendants, under authority of the challenged statutes, have moved to seize and sell their homes without providing them with adequate notice and the opportunity for hearing prior to the seizure, and (b) plaintiffs are unable to assert defenses to the foreclosure proceedings, due to their financial inability to meet the security requirements which the challenged articles of the Louisiana Code of Civil Procedure allegedly make a prerequisite for a hearing on the merits of their cases. Jurisdiction of the Court is based upon 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

Defendants admit the foreclosure of the mortgages on plaintiffs' property pursuant to the executory process procedure; however, defendants; intervenor, Louisiana Savings and Loan League; and *amici curiae*, Louisiana Bankers Association and numerous Louisiana attorneys, contend, first, that the procedure is constitutional and that plaintiffs assert no valid defenses to their obligations, and, further, that, if such defenses do in fact exist, Articles 2753, 2754, and 3610 of the Louisiana Code of Civil Procedure make provision for the presentation of such defenses in a manner not violative of plaintiffs' constitutional rights.

After careful consideration of the entire record, the stipulation of facts, the oral arguments of counsel, and the detailed trial briefs submitted on behalf of the parties and *amici curiae,* it is the opinion of the Court that Louisiana's executory process procedure as to immovable property is not violative of plaintiffs' constitutional guarantees of due process and equal protection of the law.

## FACTS

The three plaintiffs herein are purchasers of homes secured by mortgages, the terms of which provide for summary foreclosure via executory process. In each instance the mortgagee has sought to foreclose upon the property of the plaintiff through utilization of this procedure.

Plaintiffs Dell Clafin and Shannon McClendon are purchasers of low-income housing under the Section 235 plan of the Housing and Urban Development Act of 1968, 82 Stat. 476, Pub.L. 90–448. Each received a mortgage payment subsidization based upon his or her income; each was required to contribute a certain percentage of his or her income to the mortgage payments; each was unable to meet his or her share of the monthly mortgage payments, and therefore the subsidizations were terminated and foreclosures ensued.

Specifically, plaintiff Clafin encountered difficulty in meeting his share of the monthly payments on his mortgage because of a dispute arising between himself and the mortgagee over the payment of 1970 property taxes. The mortgagee, having paid the taxes for plaintiff, increased the required monthly payment for plaintiff in order to cover costs attendant thereto. Plaintiff alleges that the increased payments imposed an impossible burden upon his family budget.

Plaintiff Shannon McClendon alleges that she faces the loss of her section 235 home because of a serious drop in her income which prevented her from meeting her monthly mortgage payments.

Plaintiff Dorothy Ross purchased a parcel of property from her vendor-mortgagee in August, 1969, with the intent and purpose of using it for establishing a home. Shortly before the date of purchase the Federal Truth in Lending Act, 15 U.S.C. § 1635, became effec-

tive, whereby real property purchased for the purpose plaintiff intended is accompanied by a three-day right of rescission. Plaintiff Ross asserts that, under applicable jurisprudence, her right to rescission has remained viable because of her vendor's violation of the Act—specifically the vendor's failure to give notice of the right of rescission.

On May 17, 1971, plaintiff Ross was served with a demand for payment. On May 25, 1971, she was served with notice that her property was to be seized and sold.

On May 27, 1971, plaintiff McClendon, having waived demand for payment, was served with notice that her home was to be seized and sold.

In July, 1971, plaintiff Clafin, having waived demand for payment, was served with notice that his home was to be seized and sold.

On July 2, 1971, the instant suit was filed, in which plaintiffs allege that they are unable effectively to urge their respective defenses to the seizures of their real estate—Clafin's and McClendon's defenses being grounded upon the Housing and Urban Development Act of 1968 and regulations promulgated thereunder, and Ross' defense being based upon the Truth in Lending Act—without the posting of security, as required by the Louisiana statutes under attack, which they allegedly are financially unable to provide.

On July 26, 1971, a temporary restraining order was issued by the District Court, enjoining any further prosecution of the foreclosure proceedings against the plaintiffs until determination by a three-judge court of the constitutionality of the challenged articles of Louisiana Code of Civil Procedure.

At the time of oral argument on December 20, 1972, and on the date of this decision, the temporary restraining order was still in effect, and plaintiffs were, and are, still in possession of their properties, never having been dispossessed at any time during the course of these proceedings.

## THE LOUISIANA PROCEDURE

Article 2631 et seq., of the Louisiana Code of Civil Procedure provide a method of summary execution of judgments known as executory process.

Executory procedure has been utilized for centuries in the various continental jurisdictions, and in those portions of the Western Hemisphere which inherited their procedural law in whole or in part from Spain. Its characteristics are firstly, the ex parte judicial enforcement by the creditor on maturity or default of an obligation formally acknowledged at its confection before a notary or judge, without any necessity of obtaining judgment contradictorily against the debtor; and secondly, the assertion by the debtor of whatever defenses he may have by way of opposition or injunction to arrest the seizure and subsequent judicial sale of the debtor's property. Its theoretical bases are that the debtor has already confessed judgment on the obligation before a public officer; that this confession is entitled to at least prima facie judicial recognition; and that its enforcement should be arrested in the same manner as the enforcement of a judgment is arrested. If the debtor has no defense on the obligation, the proceeding remains an ex parte one. If the debtor asserts a defense, the action is converted into a contradictory proceeding, with the debtor the actor bearing the burden of proving his defense.

McMahon, "The Historical Development of Executory Procedure in Louisiana", 32 Tul.L.Rev. 555, 556 (1958).

In order to foreclose on an obligation *via executiva*, the creditor must file a petition in the state district court of proper jurisdiction (La.C.C.P. Art. 2634) along with the note evidencing the debt, the act of mortgage or privilege importing a confession of judgment, and any other documents necessary ". . . to prove his [the creditor's] right to use executory process to enforce the mortgage or privilege." La.C.C.P.

Art. 2635. All the documents used in support of the petition are to be in authentic form[1] with exceptions allowed only as specifically provided by law.

■ It is well settled in Louisiana jurisprudence that ". . . [a] strict compliance with the letter of the law" is required as to all aspects of executory process. Myrtle Grove Packing Co. v. Mones, 226 La. 287, 76 So.2d 305, 306 (1954); Catalanotto v. Associates Discount, 207 So.2d 180, 182 (La.App., 1968), writ ref., 252 La. 105, 209 So.2d 38, cert. den'd 393 U.S. 989, 89 S.Ct. 472, 21 L.Ed.2d 452 (1968); Tapp v. Guaranty Finance Co., 158 So.2d 228, 230–231 (La.App., 1963), writ ref., 245 La. 640, 160 So.2d 228 (1963). It is held that any deviation from the required forms or procedure will result in the conversion of the proceeding from executory to ordinary process.

The court, upon determination that the petition and supporting evidence justify the use of executory process, orders that a writ of seizure and sale issue as to the property in question. La.C.C.P. Art. 2638. However, it is important to note that, while the writ orders the sheriff to seize the property, in the case of real property the seizure is not actual, but constructive, La.C.C.P. Art. 326,[2] the only evidence of seizure being recordation of the writ of seizure for public record as provided by Louisiana Revised Statutes 13:3851–13:3858. Eden v. Johnson, 176 So.2d 476, 478–479 (La.App., 1965).

In a very recent decision upholding the constitutionality of the executory process system and considering the same authorities principally relied upon by plaintiffs in the instant case, the Louisiana Supreme Court noted:

If the immovable property to be seized under the writ is under lease or occupied by the owner, the seizure can be constructive only. As to other immovable property, it may be constructive. LSA–C.C.P. Art. 326. A constructive seizure is made by serving a notice of seizure on the debtor and filing the notice with the recorder of mortgages. LSA–R.S. 13:3853–3855. *In such a seizure, no actual dispossession takes place until after the advertisement and sale of the property at least thirty days later.* Buckner v. Carmack, 272 So.2d 326 (La.Sup.Ct., 1973). (Emphasis supplied).

Prior to the issuance of the writ of seizure and sale, a demand for payment is served upon the debtor; however, such notice can be waived. La.C.C.P. Art. 2639. If demand for payment has been waived, the writ of seizure and sale issues immediately. Notice of seizure, however, must be served upon the debtor, La.C.C.P. Art. 2293, which notice cannot be waived, La.C.C.P. Art. 2721, and in instances of an unrepresented debtor, La.C.C.P. Art. 2674, an attorney is appointed for service of such notice, La. C.C.P. Art. 2641.

Three days must elapse following the service of notice of seizure on the judgment debtor, after which the sheriff is required to advertise the property for sale twice over a thirty day period in the case of immovable property. La.C. C.P. Art. 2331. At the expiration of this period, the property is sold at judicial sale.

Executory process in Louisiana to enforce a mortgage, as distinguished from its continental counterparts, is merely a proceeding in rem against the property itself, and the mortgagee obtains no personal judgment against the mortgagor.

If the mortgaged property has been appraised prior to judicial sale, and it fails to clear the mortgage indebtedness, the mortgagee may obtain a per-

---

1. An authentic act must be executed before a notary and two witnesses as required by the Louisiana Civil Code Article 2234.

2. The Louisiana Code of Civil Procedure, Article 326, provides in pertinent part:

"He [the sheriff] may take actual possession of all immovable property seized, unless it is under lease or occupied by an owner."

sonal judgment against the mortgagor for the deficiency. But the mortgagee can do so only by converting the executory proceeding into an ordinary one, or by instituting a new suit against the mortgagor. Under either method, the new proceeding is a personal action in which the mortgagor must be subject personally to the jurisdiction of the court, process must be served on him, and he has all of the rights of a defendant in an ordinary proceeding. The confession of judgment, having served its purpose in the executory proceeding, has become functus officio, and the mortgagee must prove the indebtedness asserted by the usual modes of proof."

McMahon, *supra*, 32 Tul.L.Rev. at 570–571. See also La.C.C.P. Art. 2644.

At any time prior to the judicial sale, the debtor may terminate the proceeding by payment of the indebtedness, along with interest and costs. La.C.C.P. Art. 2340; McMahon, *supra*, at 570.

In the event that the debtor has objections or defenses to the seizure of his property, the Code of Civil Procedure provides several methods by which he may proceed—that of suspensive appeal from the order of the court directing the issuance of the writ of seizure and sale, or via an injunction to arrest the seizure and sale. La.C.C.P. Art. 2642.

(a) Suspensive appeal: The debtor may take a suspensive appeal from the order of the court directing the issuance of the writ of seizure and sale. La.C.C.P. Art. 2642. Such an appeal suspends any action in relation to the seizure until the determination of the merits of the appeal. In order to take such an appeal, the Code provides that security shall be provided:

. . . for an amount exceeding by one-half the balance due on the debt secured by the mortgage or privilege sought to be enforced, including principal, interest to date of the order of appeal, and attorney's fees, but exclu-

sive of court costs. La.C.C.P. Art. 2642.

The avenue of suspensive appeal is open to those who attack the seizure upon ". . . the sufficiency of the evidence on which it [the court's order directing the issuance of the writ of seizure and sale] is based." McCrory v. Harp, 31 F.Supp. 354, 359 (W.D.La., 1940).

(b) Injunction: The debtor can present any defense to the seizure in an action to enjoin the seizure and sale of the property. In those instances enumerated in Article 2753 of the Code of Civil Procedure no security is required for such a proceeding. In others security must be provided in an amount to be set by the court. In both 2753 and non–2753 cases a full hearing on the merits of the defense is afforded the debtor.

Relative to the procurement of an injunction to arrest the seizure and sale, the Code of Civil Procedure provides:

Art. 2751. Grounds for arresting seizure and sale.

The defendant in the executory proceeding may arrest the seizure and sale of the property by injunction when the debt secured by the mortgage or privilege is extinguished, or is legally unenforceable, or if the procedure required by law for an executory proceeding has not been followed.

Art. 2752. Injunction procedure.

The petition for injunction shall be filed in the court where the executory proceeding is pending, either in the executory proceeding or in a separate suit. The injunction proceeding to arrest a seizure and sale shall be governed by the provisions of Articles 3601 through 3609, and 3612, except as provided in Article 2753.

Art. 2753. Security not required in certain cases.

The original debtor, his surviving spouse in community, heirs, legatees, and legal representative are not required to furnish security for the is-

suance of a temporary restraining order or preliminary injunction to arrest a seizure and sale, when the injunctive relief is applied for solely on one or more of the following grounds:

(1) The debt secured by the mortgage or privilege is extinguished or prescribed;

(2) The enforcement of the debt secured by the mortgage or privilege is premature, either because the original term allowed for payment, or any extension thereof granted by the creditor, had not expired at the time of the institution of the executory proceeding;

(3) The act evidencing the mortgage or privilege is forged, or the debtor's signature thereto was procured by fraud, violence, or other unlawful means;

(4) The defendant in the executory proceeding has a liquidated claim to plead in compensation against the debt secured by the mortgage or privilege; or

(5) The order directing the issuance of the writ of seizure and sale was rendered without sufficient authentic evidence having been submitted to the court, or the evidence submitted was not actually authentic.

Art. 2754. Security otherwise required.

Except as provided in Article 2753, no temporary restraining order or preliminary injunction shall issue to arrest a seizure and sale unless the applicant therefor furnishes security as provided in Article 3610.

Art. 3610. Security for temporary restraining order or preliminary injunction.

A temporary restraining order or preliminary injunction shall not issue unless the applicant furnishes security

in the amount fixed by the court, except where security is dispensed with by law. The security shall indemnify the person wrongfully restrained or enjoined for the payment of costs incurred and damages sustained.

## CONCLUSIONS OF LAW

Plaintiffs allege that the Louisiana procedure is violative of due process in that (a) no notice and opportunity for hearing is provided to the debtor prior to the seizure of the property, and that the notice of seizure which is provided does not properly apprise the debtor of the methods by which he may contest the seizure, and (b) the security requirements which are a prerequisite to the assertion of defenses not enumerated in Article 2753 effectively preclude low-income persons from a hearing on the merits of the seizure of their property.

■ Plaintiffs rely heavily upon Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). However, the procedures at issue in that case differ substantially from the Louisiana procedure challenged in the instant case which differences were noted by the Louisiana Supreme Court in Buckner v. Carmack, *supra*. *Fuentes* deals with prejudgment seizure of chattels pursuant to a conditional sales agreement. Louisiana's procedure does not deal with the rescission of a sale prior to judgment, but with the summary execution of a judgment confessed by the debtor at the time of the execution of the security device. In this aspect the matter at bar is more closely akin to the common law cognovit procedures at issue in Swarb v. Lennox, 405 U.S. 191, 92 S.Ct. 767, 31 L.Ed.2d 138 (1972) and D. H. Overmeyer v. Frick, 405 U.S. 174, 92 S. Ct. 775, 31 L.Ed.2d 124 (1972), wherein it was held that ". . . a cognovit clause is not *per se* violative of Fourteenth Amendment due process".[3] *Over-*

---

3. It is important and significant to note that executory process proceedings *are not* in personam proceedings, like the *cognovit actionem*. No personal judgment is ren-

dered; the creditor obtains no right of execution upon the debtor's wages or other property. Mack Motor Truck Corp. v. Coco, 235 La. 1077, 106 So.2d 518

*meyer supra,* 405 U.S. at 187, 92 S.Ct. at 783, 31 L.Ed.2d at 135. Confessions of judgment of this nature are to be examined according to the facts of each case to determine whether the confession was knowingly, voluntarily, and intelligently made. In this case, however, these questions are not before the Court, plaintiffs having made no argument and presented no factual evidence that the confessions of judgment in the acts of mortgage executed by plaintiffs were constitutionally insufficient according to the standards set forth by the Supreme Court in *Swarb* and *Overmeyer.*

### (a) Notice

■ Plaintiffs urge that the fact that a debtor in an executory proceeding receives *no notice prior to the service of the notice of seizure and sale upon him* violates the standard set out in *Fuentes.* This conclusion, however, is based upon a broad reading of that decision, which holding was specifically stated by the Supreme Court to be a "narrow one". *Fuentes, supra,* 407 U.S. at 96, 92 S.Ct. at 2002, 32 L.Ed.2d at 579.

> We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation—not adjudication. Since the essential reason for the requirement of a prior hearing is to prevent unfair and mistaken deprivations of property, however, it is axiomatic that the hearing must provide a real test. "[D]ue process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at es-

tablishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor before he can be deprived of his property . . ." Sniadach v. Family Finance Corp., supra, 395 U.S. [337] at 343, 89 S.Ct. [1820] at 1823 [23 L. Ed.2d 349] (Harlan, J. concurring). See Bell v. Burson, supra, 402 U.S. [535] at 540, 91 S.Ct. [1586] at 1589 [29 L.Ed.2d 90]; Goldberg v. Kelly, supra, 397 U.S. [254] at 267, 90 S.Ct. [1011] at 1020 [25 L.Ed.2d 287].

*Fuentes, supra,* 407 U.S. 96–97, 92 S. Ct. 2002–2003, 32 L.Ed.2d 579–580. The court further noted that:

> Leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing in preventing seizures of goods where the party seeking the writ has little probability of succeeding on the merits of the dispute.

*Fuentes, supra,* 407 U.S. at 97, 92 S. Ct. at 2002, 32 L.Ed.2d at 579.

Louisiana's executory procedure at issue here does not make specific provision for a hearing on the merits prior to the service of a writ of seizure and sale upon the debtor. However, as has been pointed out, the service of such writ does not result in any actual dispossession in the case of immovable property. The debtor *must* be given notice that the writ of seizure and sale has issued, i.e., notice that his property has been constructively seized. Subsequent to this notice, but prior to any actual taking of the immovable property, the debtor has thirty-three days in which to take the steps necessary to obtain a hearing on the merits of the defenses which he asserts.[4]

Plaintiffs contend that the notice of seizure and sale which the debtor re-

(1958); Greater New Orleans Homestead Association v. Bell, 219 La. 41, 52 So.2d 241 (1951).

4. Louisiana's executory procedure was discussed by the Supreme Court in Fleitas v. Richardson, 147 U.S. 538, 544, 13 S.Ct.

429, 432, 37 L.Ed. 272, 274 (1892), wherein it was stated that, ". . . although the creditor may obtain that order [for seizure and sale] without previous notice to the debtor, the sale cannot take place until the debtor has had notice and opportunity to interpose objections."

ceives is insufficient in that it does not point out to the debtor his right to contest the seizure and sale or the manner by which he may do so. However, it is the opinion of the Court that the notice received by the Louisiana debtor in an executory proceeding meets the standard set forth in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S. Ct. 652, 94 L.Ed. 865 (1950).[5] Prior to any actual deprivation of property, the debtor is apprised that the executory proceeding has been initiated. Notice consists of a demand for payment served by the sheriff upon the debtor. La.C. C.P. Art. 2639. In the event that the notice of demand has been waived, the debtor is served with notice of the writ of seizure and sale, which notice cannot be waived. La.C.C.P. Arts. 2293, 2641, 2674, 2721. This notice bears the number of the petition which the creditor originally filed asking that executory foreclosure be initiated by the court. By this means the debtor is referred to the creditor's petition which is filed for public record and from which the debtor can obtain further information as to the creditor's basis for foreclosure to aid him in determining whether or not he chooses to contest the action.

For the foregoing reasons, it is the conclusion of the Court that the Louisiana procedure under attack provides constitutionally sufficient prior notice and opportunity for hearing to the debtor prior to actual deprivation of immovable property and is therefore an acceptable procedural "variation" as contemplated by *Fuentes*. It is further noted that Louisiana's procedure provides a much greater degree of formality than that provided by the Florida and Pennsylvania procedures examined in *Fuentes*. In those cases a writ of seizure issued upon application by the creditor to a non-judicial official, while in Louisiana no writ may issue initially unless a judge has reviewed the seizing creditor's formal petition and supporting evidence to establish a *prima facie* case as to the validity of the creditor's claim and his right to proceed *via executiva*.

### (b) Security

Plaintiffs assert that executory process effectively precludes the assertion by them of valid defenses to the seizure because the hearing of such defenses is conditioned upon the taking of a suspensive appeal or upon application for an injunction with the requisite furnishing of security, either course requiring the expenditure of funds beyond the means of low-income persons such as plaintiffs.

Of course, a state cannot condition access to its courts upon the payment of costs.[6] Griffin v. Illinois, 351 U.S. at 314, 70 S.Ct. at 657, 94 L.Ed. at 873.

---

5. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278, 132 A.L.R. 1357; Grannis v. Ordean, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363; Priest v. Board of Trustees of Town of Las Vegas, 232 U.S. 604, 34 S.Ct. 443, 56 L.Ed. 751; Roller v. Holly, 176 U.S. 398, 20 S. Ct. 410, 44 L.Ed. 520. The notice must be of such nature as reasonably to convey the required information, Grannis v. Ordean, supra, and it must afford a reasonable time for those interested to make their appearance, Roller v. Holly, supra, and cf. Goodrich v. Ferris, 214 U.S. 71, 29 S.Ct. 580, 53 L.Ed. 914." *Mullane*, 339

6. The Louisiana Code of Civil Procedure, Article 5181, provides for the waiver of court costs for indigents:
   Art. 5181 Privilege of litigating without prior payment of costs
   A person who is unable to pay the costs of court, because of his poverty and lack of means, may prosecute or defend a judicial proceeding, . . . in any trial or appellate court without paying the costs in advance, or as they accrue, or furnishing security therefor.
   The purpose of this article is ". . . to assure that no person is deprived of the opportunity to have his claim adjudicated because his unfortunate financial circumstances prevent him from satisfying the bond and cost requirements of litigation"; which statutory privilege ". . . is to

U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956); Burns v. Ohio, 360 U.S. 252, 79 S.Ct. 1164, 3 L.Ed.2d 1209 (1959); Smith v. Bennett, 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (1961); Harper v. Virginia State Board of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

However, it has recently been affirmed by the Supreme Court that a state may employ ". . . reasonable procedural provisions to safeguard litigated property . . ." if such procedures ". . . are reasonably tailored to achieve these ends and if they are uniformly and nondiscriminatorily applied." Lindsey v. Normet, 405 U.S. 56, 78, 92 S.Ct. 862, 877, 31 L.Ed.2d 36, 53 (1972). The standard to be applied in the area of "economics and social welfare" is that of "rational justification". United States v. Kras, 409 U.S. 434, 93 S.Ct. 631 at 638–639, 34 L.Ed.2d 626 (1973).

In Lindsey v. Normet, supra, plaintiffs challenged the Oregon Forcible Entry and Wrongful Detainer Statute on the grounds that security for accruing rent was required in order to obtain a trial continuance; that defenses were limited to a tenant's default; and that a bond in the amount of twice the rent due during the appeal was required by that statute in violation of Fourteenth Amendment guarantees. The Supreme Court held that the statute was constitutional in all challenged respects except that of the double bond requirement for appeal. In striking down the double bond requirement, the Court noted that a state may provide for the safeguarding of property at issue in litigation; however, these provisions must be designed to reasonably meet the desired ends and must be applied equally to all persons. In Oregon, the bond requirement for appellants under the challenged statute was greater than that of appellants in other cases and was held not to be reasonably related to the goal of preventing frivolous appeals.

■ In the instant case, the requirement that security be furnished as a prerequisite to suspensive appeal and to a proceeding for injunction (in those cases not included within the provisions of Louisiana Code of Civil Procedure Article 2753) is applied to all persons who seek to contest executory process by these methods. The amount of security for suspensive appeal is not excessive, as was the double bond requirement of Lindsey, nor is it greater in amount than that required for suspensive appeal from any other type of judgment (as provided by Louisiana Code of Civil Procedure Article 2124). Such a requirement is reasonably related to the purpose of protecting the property and the judgment during the pendency of the appeal procedure.

Likewise, the security required as a prerequisite to the seeking of injunctive relief (in cases in which the plaintiffs' defenses are not included within the terms of Article 2753) is, as provided by Code of Civil Procedure Article 3610, to be set at the discretion of the court, and is therefore in no way facially violative of the constitutional standard. There is no allegation or charge by the plaintiffs that the bond requirement of Article 3610 is not uniformly and nondiscriminatorily applied, and the Court holds that it is a reasonable procedural provision to safeguard litigated property within the meaning of Lindsey.

It is not the contention of plaintiffs in the instant case, nor was it in Lindsey, that all possible defenses to the action cannot be presented by some method. Lindsey v. Normet, supra, 405 U.S. at 66, 92 S.Ct. at 870, 31 L.Ed.2d at 46. Plaintiffs here do not question the scope of possible defenses to executory process

be interpreted liberally in favor of giving indigent persons their day in court." Hollier v. Broussard, 220 So.2d 175, 176–177 (La.App., 1969).

Article 5181 has been applied in cases dealing with executory process. Singleton v. A Second Mortgage Co. of Baton Rouge, 252 So.2d 745 (La.App., 1971)

—it is conceded that any defense may be presented. However, it is urged that the conditioning of certain defenses upon the payment of security is violative of due process. The court in *Lindsey* held that while due process requires that there be an opportunity to present all defenses, that there was no "constitutional barrier" to Oregon's requirement that these be presented in a separate action instituted by the tenant himself during the pendency of which the tenant must provide security for accruing rent. Lindsey v. Normet, *supra*, 405 U.S. at 66, 92 S.Ct. at 870, 31 L.Ed.2d at 46.

Under the Louisiana law a mortgagor is free to present all defenses to the foreclosure action, and, while as a prerequisite to the assertion of some defenses there might be security requirements, the Court is of the opinion, as has been indicated previously, that these requirements are not excessive in amount, unreasonable in purpose, nor unequal in application, and therefore are not violative of plaintiffs' constitutional rights.

Plaintiffs acknowledge that Article 2753 does provide a means by which an injunction to arrest seizure and sale can be obtained without the necessity of furnishing security therefor. However, it is plaintiffs' contention that the defenses urged by them do not fit within the categories set forth in that Article. This, however, is no more than a contention, unsupported by evidence in the record; plaintiffs have never attempted to obtain injunctions via Article 2753.[7] There has been no judicial determination that the plaintiffs are not entitled to injunction without security; therefore any opinion by this Court as to the applicability of Article 2753 would be gratuitous and speculative.

However, it is perhaps instructive to closely examine Article 2753 against the background of interconnected portions of the Louisiana Civil Code entitled "Of Conventional Obligations."

For example, Article 2753(1) provides that injunction without security is available if the debt is extinguished or prescribed. Louisiana Civil Code Article 2130 provides:

Obligations are extinguished:

By payment

By novation

By voluntary remission

By compensation

By confusion

By loss of the thing

By nullity or rescission

By the effect of a dissolving condition which has been explained in a preceding chapter

By prescription which shall be treated in a subsequent title.

The methods of extinguishment listed in Civil Code Article 2130 are amplified in Articles 2131–2231 of the Civil Code.

Louisiana Code of Civil Procedure Article 2753(3) allows injunction without security if the signature of the debtor was "procured by fraud, violence, or other unlawful means." Louisiana Civil Code Article 1819 deals with vices of consent and provides:

Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied, as is provided in the preceding paragraph, but also where it has been produced by—

Error;

Fraud;

Violence;

Threats.

Civil Code Articles 1820–1859 further amplify the provisions of Civil Code Article 1819.

---

7. It is also noted that, as was brought out at oral argument, plaintiffs made no serious attempt to work out their indebtednesses and related problems with their mortgagees, but chose instead to attack the constitutionality of the executory procedure provisions of the Code of Civil Procedure.

The provisions of Louisiana Code of Civil Procedure Article 2753, far from being narrow and restrictive, as urged by plaintiffs, encompass nearly the whole of basic Louisiana obligations law and contemplate an extremely wide range of possible defenses to executory procedure.

Thus, executory process is interwoven into and is an integral part of the entire fabric of the Louisiana Law of Conventional Obligations and Security Devices, rooted, as is all Louisiana's law in this area, in a civilian heritage unique in this country.

For the foregoing reasons, it is the opinion of the Court that Louisiana's security provisions, where required as a prerequisite to the assertion of defenses to executory procedure, are not violative of Constitutional guarantees of due process and equal protection. In addition, it is noted that Louisiana Code of Civil Procedure Article 2753 provides a means by which a wide range of defenses can be asserted without any security requirement, and that, furthermore, there has been no showing that plaintiffs' defenses do not come within the purview of Article 2753.

## CONCLUSION

It is the opinion of the Court that Louisiana's executory process system, as it applies to immovable property, is not violative of the Fourteenth Amendment of the Constitution. This method of summary procedure affords the debtor sufficient notice and opportunity for hearing prior to actual deprivation of property. Security requirements are not unconstitutional *per se* nor are those provided by the Louisiana law unreasonable in purpose, uneven in application, or excessive in amount. The entire process is subject throughout to formalities to which the seizing creditor must strictly adhere in order to proceed *via executiva*. The procedure viewed in its entirety appears to be a well reasoned and highly efficient method for summary process which does not, however, sacrifice the

constitutional rights of the judgment debtor in the interests of efficiency for the creditor.

For all of the foregoing reasons the relief sought by plaintiffs is denied, their petition should therefore be dismissed, and the temporary restraining order issued herein on July 26, 1971 is hereby dissolved. Plaintiffs filed in forma pauperis. All other parties should bear their own costs.

Let judgment issue accordingly.

AINSWORTH, Circuit Judge, fully concurs in the decision of R. BLAKE WEST, J.

HEEBE, District Judge (dissenting):

Because I do not believe that the notice of seizure and sale received by the debtor in an executory process proceeding comports with the principle expressed in Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1949), I dissent from the opinion of the Court.

The plaintiffs in this action received from the sheriff's office documents informing them as follows:

"Take notice, that I have seized, and in three days from the service hereof, shall proceed to advertise and sell, according to law, the following described property . . . to pay and satisfy the writ of seizure and sale issued in this case . . . ."

A literal reading of this clause suggests to the property owner that the sale of his home is inevitable. In this respect, the notice is not simply deficient in failing to adequately apprise the debtor of his right to a hearing, but it is positively misleading in that it may create the impression in one who is in fact delinquent in his mortgage payments, but who may be unaware of a valid defense to the action, that the loss of his property is a *fait accompli*.

In view of the negligible cost, if any, of improved notice, there appears no justification for exposing these homeowners to the risk that they will be mis-

guided, to their prejudice, by the deficient form which is currently utilized. Nor would the essentially summary nature of the vast majority of seizures be affected by conveying more information.

Clearly, *Mullane, supra*, does not employ a rigid calculus to evaluate notice of pending actions, but instead establishes guidelines which amount to a rule of reason. Applying this standard, I can only conclude that notice of Louisiana executory process is not designed, as it must be, to inform the debtor that objections to seizure may be interposed. Surely it makes little sense to technically guarantee the debtor his right to a day in court while partially concealing from him the existence of that right.